Here UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
PENN-STAR INSURANCE COMPANY,

               Plaintiff,

        -against-

FPM REALTY LLC, ROSEWOOD
REALTY ROCHESTER, LLC, GATEWAY
PROPERTY SOLUTIONS LTD,
MUSSUMEI ELECTRIC, INC., FROS AIR
CONDITIONING & HEATING, INC., LME
INC., LARRY MASCI ELECTRIC, INC.,
*and* ABJ FIRE PROTECTION CO.,

               Defendants.
----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
21 CV 975 (EK) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

On February 23, 2021, plaintiff Penn-Star Insurance Company ("Penn-Star") commenced

this declaratory judgment action against defendants FPM Realty LLC ("FPM"), Rosewood

Realty Rochester, LLC ("Rosewood"), Gateway Property Solutions Ltd ("Gateway"),

Mussumeci Electric, Inc. ("Mussemeci"), Fros Air Conditioning & Heating, Inc. ("Fros"), LME

Inc. ("LME"), Larry Masci Electric, Inc. ("Masci"), and ABJ Fire Protection Co. ("ABJ")

(collectively, "defendants"), seeking a declaration that it has no duty to defend or indemnify

FPM in connection with claims arising from a fire that occurred on or about February 18, 2018.

(See Compl.[1]).

Currently pending before this Court on referral from the Honorable Eric R. Komitee are

plaintiff's June 4, 2021 motion to strike FPM's Fifth Affirmative Defense, and FPM's June 21,

2021 cross-motion opposing the motion to strike and seeking a transfer of the action to the

---

[1] Citations to "Compl." refer to plaintiff Penn-Star Insurance Company's Complaint, filed on Feb.
23, 2021, ECF No. 1.

Western District of New York.  For the reasons set forth below, the Court respectfully

recommends that plaintiff's motion to strike be denied and that defendant FPM's cross-motion to

transfer be granted.

### FACTUAL BACKGROUND

Plaintiff Penn-Star is an insurance company, located at Three Bala Plaza East, Suite 300,

Bala Cynwid, Pennsylvania 19004.  (Compl. ¶ 1).  Defendant FPM is a New York corporation,

with its principal place of business located at 375 Glen Eilyn Way, Rochester, New York 14618.

(Id. ¶ 2).  On November 6, 2017, FPM entered into an agreement with defendant Gateway to

perform work in connection with the Rosewood Project, which involved the conversion of a

hotel located at 4635 West Henrietta Road, Henrietta, New York 14467, into an assisted living

facility.  (Id. ¶¶ 19, 20, 22).  In early December 2017, FPM applied for, and was issued, a policy

of insurance with Penn-Star to cover work to be performed on the Rosewood Project.  (Id. ¶¶ 17,

23).

On February 18, 2018, a fire occurred at 4635 West Henrietta Road, resulting in a lawsuit

filed by Rosewood in Supreme Court, New York County, captioned Rosewood Realty

Rochester, LLC v. Gateway Property Solutions Ltd., Index No. 155632/2020 ("the Rosewood

action"), seeking damages from Gateway, Mussemeci, and Fros.  (Id. ¶ 14).  FPM was not named

in the initial action, but on December 24, 2020, Gateway filed a third-party action against FPM,

LME, Masci, and ABJ, alleging breach of contract and seeking contractual and common law

indemnity and contribution.  (Id. ¶ 15).  On December 30, 2020, the state court case was ordered

transferred to Monroe County, New York.  (Picciotti Aff.[2] ¶ 3, Ex. A).

---

[2] Citations to "Picciotti Aff." refer to the Attorney Affidavit in Support of Defendant FPM Realty LLC's Cross Motion and in Opposition to Plaintiff's Motion to Strike, dated June 21, 2021, ECF No. 33-1.

Penn-Star disclaimed coverage under FPM's Policy as to all parties in the underlying Rosewood case and commenced this declaratory judgment action on February 23, 2021, seeking to rescind the Policy and requesting a declaration that it has no obligation to provide a defense or indemnity to any party in the Rosewood claim.  Among other allegations, Penn-Star alleges that FPM made several misrepresentations to Penn-Star in the course of obtaining the Policy, including *inter alia*, failing to disclose that FPM was serving as Project Manager on commercial construction projects, such as the Rosewood Project (id. ¶¶ 25-26); reporting that the work performed on the Rosewood Project was for repairs when the work was actually renovation work (id. ¶¶ 27, 28); underreporting its employees (id. ¶ 29); and reporting that it was serving as a general contractor and not a subcontractor, when the contract with Gateway was a subcontract agreement.  (Id. ¶¶ 20, 30).  Penn-Star asserts that it would not have issued the Policy had it known of this information, or it would have issued a "vastly different policy to FPM."  (Id. ¶¶ 34, 35).  Apart from the misrepresentations allegedly made by FPM in obtaining the Policy, Penn-Star lists several Policy Exclusions that would bar coverage for the claims in the Rosewood action.  (Id. ¶¶ 39-47).

## PROCEDURAL BACKGROUND

Based on the Affidavits of Service filed by Penn-Star, all defendants, with the exception of Gateway, were served with the Summons and Complaint in this federal action on March 9, 2021, through service on the Secretary of State, with answers due on March 30, 2021.  (See Verveniotis Decl.[3] ¶¶ 5-6; ECF Nos. 7-13).  Defendant Gateway was served on March 15, 2021 through personal service at Gateway's address on Eli Tessler, "the Authorized Agent . . . to accept service of process" on behalf of Gateway.  (ECF No. 14).  Gateway answered in a timely

---

[3] Citations to "Verveniotis Decl." refer to the Declaration of Steven Verveniotis, Esq., In Support of Motion to Strike, dated June 4, 2021, ECF No. 27-1.

fashion, filing its Answer on March 26, 2021. (ECF No. 15; Vervenoitis Decl. ¶ 10). The remaining defendants defaulted and on April 1, 2021, plaintiff moved for entry of default against all of the defendants except Gateway. (ECF No. 17). The Clerk of Court issued a Certificate of Default against all of the non-answering defendants on April 8, 2021. (Verveniotis Decl. ¶¶ 8, 9; ECF No. 19).

On April 15, 2021, after receiving notice of the action from the Secretary of State that same day, defendant FPM sent an email to plaintiff's counsel, seeking an extension of time to file an Answer. (Verveniotis Decl. ¶ 11; ECF No. 27-2). Plaintiff's counsel agreed to allow the filing of a late answer provided FPM agreed to waive all jurisdictional defenses, including any challenges to venue. (Verveniotis Decl. ¶ 12; ECF No. 27-3). FPM declined to waive its challenge to venue and proceeded to file an Answer on April 20, 2021. (ECF No. 21). The other defendants also sought leave to file late answers but did not seek to challenge venue. (Pl.'s Mem.[4] at 1).[5] Gateway, in its timely-filed Answer, did not challenge venue. (See ECF No. 15).

Thereafter, on June 4, 2021, plaintiff moved to strike FPM's Fifth Affirmative Defense as to Venue. (See Pl.'s Mem.). FPM filed a motion opposing plaintiff's motion to strike and a cross-motion to transfer venue of this action to the Western District of New York. (See Def.'s Mem. in Opp.[6]).

---

[4] Citations to "Pl.'s Mem." refers to plaintiff's Memorandum of Law in Support of Penn-Star Insurance Company's Motion to Strike FPM's Fifth Affirmative Defense as to Venue, filed June 4, 2021, ECF No. 27-8.

[5] Since Penn-Star consented to the other defendants' late answers, the Court granted the requests. (See Electronic Orders, dated June 3, 6 & 22, 2021).

[6] Citations to "Def.'s Mem. in Opp." refer to Defendant FPM's Memorandum of Law in Opposition to Plaintiff's Motion to Strike and In Support of Defendant's Motion to Transfer Venue, filed June 21, 2021, ECF No. 33-9.

DISCUSSION

**A. Plaintiff's Motion to Strike FPM's Fifth Affirmative Defense**

In moving to strike FPM's Fifth Affirmative Defense challenging venue, plaintiff

contends that FPM has waived the right to challenge venue because it failed to timely file an

Answer to the Complaint and instead defaulted.  (Pl.'s Mem. at 1).

Under Federal Rule of Civil Procedure 12(f), the Court may "strike from a pleading an

insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  See

McCaffery v. McCaffery, No. 11 CV 703, 2012 WL 3260299, at *5 (E.D.N.Y. Aug. 8, 2012)

(citing Fed. R. Civ. P. 12(f)).  Courts apply the Rule 12(f) standard in motions to strike an

affirmative defense for legal insufficiency, rather than Rule 12(b)(6), which is applied when a

motion is filed to dismiss a claim or a counterclaim.  See id. at *5-6 (applying the Rule 12(b)(6)

standard to a motion to dismiss the defendant's counterclaims for failure to state a claim and the

Rule 12(f) standard to a motion to strike the defendant's affirmative defenses); Texas 1845 LLC

v. Wu Air Corp., No. 11 CV 1825, 2012 WL 382828, at *3-4 (E.D.N.Y. Feb. 6, 2012) (same).

The Second Circuit has observed that "[a] motion to strike an affirmative defense under

Rule 12(f) . . . for legal insufficiency is not favored and will not be granted unless it appears to a

certainty that plaintiffs would succeed despite any state of the facts which could be proved in

support of the defense."  Salcer v. Envicon Equities Corp., 744 F.2d 935, 939 (2d Cir. 1984),

vacated on other grounds, 478 U.S. 1015 (1986); McCaffery v. McCaffery, 2012 WL 3260299,

at *5.  "[E]ven when the defense presents a purely legal question, the courts are very reluctant to

determine disputed or substantial issues of law on a motion to strike; these questions quite

properly are viewed as determinable only after discovery and a hearing on the merits.  To do

otherwise would be to run the risk of offering an advisory opinion on an abstract and

hypothetical set of facts." Salcer v. Envicon Equities Corp., 744 F.2d at 939 (internal citations and quotations omitted).

Before a court may grant a motion to strike an affirmative defense, the plaintiff must show that: "(1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." Bernstein v. Mount Ararat Cemetery Inc., No. 11 CV 68, 2012 WL 3887228, at *9 (E.D.N.Y. Sept. 7, 2012).

"In considering the sufficiency of a defense under the first two prongs of the analysis, courts apply the same standard applicable to a motion to dismiss pursuant to Rule 12(b)(6)." McCaffery v. McCaffery, 2012 WL 3260299, at *6 (quoting Coach, Inc. v. Kmart Corps., 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010)).  Thus, the Court looks solely upon the face of the pleading and "accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor." Coach, Inc. v. Kmart Corps., 756 F. Supp. 2d at 425.  "With respect to the third prong, courts within this circuit have found that "[i]ncreased time and expense of trial may constitute sufficient prejudice to warrant striking an affirmative defense." Id. at 426 (citing Estee Lauder, Inc. v. Fragrance Counter, Inc., 189 F.R.D. 269, 272 (S.D.N.Y. 1999)).

1) Plaintiff's Arguments

Plaintiff argues that, because FPM defaulted, it has waived its right to challenge venue. (Pl.'s Mem. at 3 (citing Hoffman v. Blaski, 363 U.S. 335, 343 (1960))).  Plaintiff states that, in analyzing the Rule 12(f) factors, the sole factual issue is whether FPM defaulted and failed to timely file an answer.  (Id.)  According to plaintiff, given that FPM's time to answer expired on March 30, 2021, and the Clerk's Certificate of Default was issued on April 8, 2021, there is no dispute that FPM failed to timely file its answer.  (Id. (citing ECF No. 19)).  Indeed, FPM does

6

not claim that it timely filed an answer.[7]  (Id. (citing ECF No. 21)).  Therefore, plaintiff contends

that there are no factual issues in dispute as to the default.  Similarly, plaintiff argues that there is

no question of law as it is "black letter law that a party waives its right to challenge venue by

failing to timely file an answer and defaulting."  (Id.)

Plaintiff notes that, even where the default is ultimately vacated by the court, courts have

held that the defendants had waived their right to challenge venue.  (See id. at 5).  In this case,

plaintiff agreed to allow FPM to file a late answer and participate in the lawsuit so long as it

agreed not to challenge venue.  (Verveniotis Decl. ¶¶ 11-16).  Instead, FPM simply filed a late

answer without plaintiff's consent or leave from this Court.[8]  (See ECF No. 21).  Thus, plaintiff

contends that there is no question of fact or law that is relevant to plaintiff's motion to strike the

venue challenge and that would allow defendant to succeed on its waiver argument.  (Pl.'s Mem.

at 6).  Plaintiff further argues that, given that FPM has waived its right to challenge venue,

plaintiff would be prejudiced if FPM was allowed to proceed on its Fifth Affirmative Defense

challenging venue.[9]  (Id.)

---

[7] The Court notes that FPM claims both that service was improper in its Answer (see ECF No. 21), and raises the issue of service in its opposition to plaintiff's motion, contending that it "was not properly served."  (Def.'s Mem. in Opp. at 1).

[8] Indeed, FPM still has not moved to vacate the default nor sought authorization from this Court to file a late answer, although FPM filed a letter on July 26, 2021, stating that, while the Court "may vacate the notation of default without a formal motion, [defendant] request[s] permission to file a formal motion with[in] 5 days of the Court would prefer FPM do so."  (See ECF No. 39).  The Court has not yet requested a formal motion.

[9] Where "a defense must fail as a matter of law, its inclusion prejudices the plaintiff because it will increase the duration and expense of trial."  EEOC v. Grace Episcopal Church of Whitestone, Inc., No. 06 CV 5302, 2008 WL 11417790, at *1 (E.D.N.Y. Nov. 13, 2008).  However, "prejudice is generally not an appropriate basis to strike a timely asserted and otherwise sufficiently pled affirmative defense."  Midwest Athletics & Sports All. LLC v. Xerox Corp., No. 19 CV 6036, 2020 WL 4583744, at *6 (W.D.N.Y. Aug. 10, 2020); see Bernstein v. Mount Ararat Cemetery Inc., No. 11 CV 68, 2012 WL 3887228, at *9 (E.D.N.Y. Sept. 7, 2012) (stating that, in order to strike an affirmative defense, the court must find that the defense fails as a matter of law, fails as a matter of fact, and prejudices the plaintiff (emphasis added)).  Since the Court finds that the defense does not fail as a matter of law, the Court need not address whether the defense prejudices plaintiff.

To the extent that defendant may complain about the method of service used in this case, plaintiff notes that Section 303 of the Limited Liability Company Law explicitly provides that "Service of process [through the Secretary of State] on such limited liability company shall be complete when the secretary of state is so served." (Pl.'s Reply[10] at 5 (quoting N.Y. Ltd. Liab. Co. Law § 303)). Thus, according to plaintiff, FPM was properly served upon delivery of the Summons and Complaint to the Secretary of State and, by failing to answer, FPM waived any objections to venue.

2) FPM's Arguments

FPM responds that plaintiff's motion to strike the affirmative defense of improper venue is "perplexing." (Picciotti Aff. ¶ 4). According to counsel, he had been communicating with plaintiff's counsel for several months before plaintiff filed this action relating to the coverage issues and yet Penn-Star chose to serve FPM with the Summons and Complaint through the Secretary of State of New York, without bothering to provide counsel with notice of the filing of the lawsuit. (Id. ¶¶ 2, 4). Defendant complains that despite the numerous oral and written communications between him and plaintiff's counsel, he was never approached about accepting service, nor was he provided with a courtesy copy of the Complaint. (Id. ¶ 5). As a result of a several week delay between the time the Secretary of State received the Summons and Complaint and the time it was provided to FPM, defendant did not learn of the action until April 15, 2021, when service was ultimately made upon defendant by the Secretary of State. (Id.) Counsel explains that immediately upon receiving notice of the action, he reached out to plaintiff's counsel to notify him of the delay in the Secretary of State providing the pleadings to

---

[10] Citations to "Pl.'s Reply" refer to plaintiff's Memorandum of Law in Further Support of Penn-Star Insurance Company's Motion to Strike FPM's Fifth Affirmative Defense as to Venue and In Opposition to FPM's Motion to Transfer Venue, filed June 25, 2021, ECF No. 34.

FPM.  (Id. ¶ 6; see also ECF No. 33-4 (providing email from defense counsel)).  When plaintiff's counsel would only agree to extend the time to answer conditioned on FPM's agreement to waive any venue objections, FPM filed an answer within five days of receiving notice of the action.  (Id. ¶ 7; see ECF No. 21).  Defendant states that, because it had no notice of the action, it also was unaware of the "initial notation of a default" that was entered against it.  (Picciotti Aff. ¶ 7).

Defendant further argues that, because no default occurred here, defendant did not waive its venue objection, and the cases cited by plaintiff are inapplicable because they all relate to instances where defendant was properly served, failed to appear, and then a default judgment is entered.  (Def.'s Mem. in Opp. at 4).  Moreover, defendant argues that even if a default occurred here, it is because defendant was not properly served in a timely fashion.  (Def.'s Mem. in Opp. at 5).  Defendant notes that for service to be effective under New York law, the Secretary of State is required to "promptly" forward the Complaint to the defendant.  (Id. (citing N.Y. C.P.L.R. § 306, which provides that "[t]he Secretary of State shall promptly send one of such copies by certified mail return receipt requested" to the corporation to be served)).  Defendant acknowledges that while an affidavit of service on the Secretary of State "may be considered initial evidence of service on the Defendant," a defendant may rebut that by submitting an affidavit that the complaint was not received from the Secretary of State in a timely manner.  (Id. (citing Pandis v. Model Quality Intros., Inc., No. 518900/2019, 2020 WL 6135095, at *1 (N.Y. Sup. Ct. 2020) (holding that where the defendant "alleges in a sworn affidavit [that] the secretary of state failed to forward the complaint . . ., [the] affidavit raises an issue regarding whether the secretary of state forwarded the complaint to the defendant pursuant to CPLR 306(b)(1)"))).

In this case, Mike Diskind, a principal of FPM, submitted an Affidavit attesting to the

9

facts set forth previously regarding service and the communications between plaintiff's and defendant's counsel.  (Diskind Aff.[11] ¶¶ 1, 3-4).  According to Mr. Diskind, the address on file with the Secretary of State for service on FPM was correct at the time plaintiff provided the Complaint to the Secretary of State, but, for some reason, the Secretary of State delayed providing the Complaint to FPM for "several weeks after it was received by the Secretary of State." (Id. ¶ 5).  It was not until April 15, 2021 that FPM finally received the Complaint and, up until that date, "FPM had no notice whatsoever that the Plaintiff commenced this action." (Id. ¶ 6).  Mr. Diskind "notified [FPM's counsel] Harris Beach immediately upon receiving the Complaint (within an hour or two)." (Id.)  Again, although Harris Beach reached out immediately to plaintiff's counsel, plaintiff refused to grant an extension of time to answer unless defendant agreed to waive its venue challenge.  (Id. ¶ 7).

Based on Mr. Diskind's Affidavit, defendant argues that it should not be penalized for the "unusual delay in the office of the Secretary of State that occurred here." (Def.'s Mem. in Opp. at 6).  Defendant also argues that the "fact that all but one of the many co-defendants" delayed in answering "demonstrates that something happened at that office" resulting in the service delay. (Id.)  Defendant notes that it "let virtually no time pass" after it actually received notice of the action before filing its answer and its venue objection.  (Id.)  Moreover, defendant contends that plaintiff is not prejudiced by allowing the Court to consider defendant's venue motion, stating that if plaintiff was truly concerned with judicial efficiency and an expeditious resolution of the coverage issue, plaintiff would have provided FPM's counsel with a courtesy copy of the Complaint and agreed that the Western District of New York is the proper venue.  (Id. at 7-8).

---

[11] Citations to "Diskind Aff." refers to the Affidavit of Mike Diskind in Support of FPM Realty LLC's Cross Motion and in Opposition to Plaintiff's Motion to Strike, dated June 18, 2021, ECF No. 33-5.

**B. Analysis of Plaintiff's Motion to Strike**[12]

In this case, plaintiff is not pursuing a default judgment against FPM.  (See Pl.'s Reply at 6 (stating "Penn-Star is not seeking to deprive FPM from contesting this matter on the merits")).  Nevertheless, the standards for vacating a default are instructive in analyzing the question of defendant's waiver in this case.

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  After the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  See Fed. R. Civ. P. 55(b).  In light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and should only be entered as a last resort.  Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).

---

[12] The Court notes that plaintiff has only challenged defendant's affirmative defense on the grounds of waiver and neither party has addressed the question of whether the action should be dismissed because venue is not proper in the Eastern District of New York.  Instead, plaintiff appears to assume that venue is proper in this district for purposes of discussing transfer and opposes defendant's motion to transfer venue to the Western District of New York based on the factors relevant to an analysis under 28 U.S.C. § 1404.  In the absence of briefing on the issue, the Court has not addressed whether FPM's affirmative defense of improper venue is a proper ground for dismissal.  See Empire Fire & Marine Ins. Co. v. Estrella, No. 18 CV 3422, 2019 WL 4744208, at *3 (E.D.N.Y. Sept. 30, 2019) (holding that "[a] district court may not dismiss a case sua sponte for improper venue absent extraordinary circumstances" (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 796 (2d Cir. 1999))).  Further, as held by other courts, the Court need not address the sufficiency of the defenses in order to rule on the motion to strike.  See, e.g., McCaffery v. McCaffery, 2012 WL 3260299, at *6 (denying plaintiff's motion to strike defendant's affirmative defenses, including venue, and setting briefing schedule for plaintiff's motion for summary judgment); Houston v. Manheim-New York, No. 09 CV 4544, 2010 WL 744119, at *2 (S.D.N.Y. Mar. 3, 2010) (denying plaintiff's motion to strike but not determining sufficiency of defenses); County Vanlines Inc. v. Experian Info. Sols., Inc., 205 F.R.D. 148, 158 (S.D.N.Y. 2002) (denying plaintiff's motion to strike in part but not determining sufficiency of defenses).

In Enron Oil Corp. v. Diakuhara, the court set forth factors that courts should consider in determining whether to set aside a default or a default judgment.  10 F.3d at 96; see also United States v. Bullen, No. 97 CV 7322, 1999 WL 118781, at *2 (E.D.N.Y. Mar. 1, 1999).  These include (1) whether the defendant's default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented.  Enron Oil Corp. v. Diakuhara, 10 F.3d at 96 (citations omitted).  "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result."  Id. (citing Sony Corp. v. Elm State Elecs., Inc., 800 F.2d 317, 320 (2d Cir. 1986)).

Defendant's argument that it did not receive timely service of the Complaint from the Secretary of State, and therefore had no notice that it was required to file an answer goes to the first Enron factor – whether defendant's default was willful.  As the Supreme Court noted in Henderson v. United States, "the core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objection."  517 U.S. 654, 672 (1996).  In following the Supreme Court's definition of acceptable service, the Second Circuit has held that there must be service "reasonably calculated to provide actual notice of the action."  National Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 258 (2d Cir. 1991), cert. denied, 502 U.S. 968 (1991); see also United States Fire Ins. Co. v. Jesco Const. Corp., No. 03 CV 2906, 2003 WL 21689654, at *3 (S.D.N.Y. July 16, 2003) (stating that "[t]he primary purpose of service of process is to give a defendant legal notice of the claims asserted against him so that he may prepare his defense").  If a defendant does not receive service in compliance with Rule 4 of the Federal Rules of Civil Procedure, and does not waive formal service, the court lacks personal jurisdiction over the

defendant.  See Martin v. New York State Dep't of Mental Hygiene, 588 F.2d 371, 373 (2d Cir. 1978), cert. denied, 445 U.S. 952 (1980).

It is well established that service is complete when the Secretary of State has been properly served and here, there is no challenge to the affidavit of service upon the Secretary of State.  See Criollo v. NY Fine Interiors Inc., No. 19 CV 5974, 2021 WL 1200318, at *9 (E.D.N.Y. Mar. 3, 2021), report and recommendation adopted, 2021 WL 1193082 (E.D.N.Y. Mar. 30, 2021).  Thus, plaintiff is correct that service was properly effected on FPM through service upon the Secretary of State.  Nor is there any dispute in this case that the Secretary of State did not provide FPM or the other defendants with copies of the Complaint until several weeks later.  (See Pl.'s Reply at 5-6 (stating only that defendant "speculates that something" caused a delay and arguing that it does not "impact plaintiff's service")).  There also does not appear to be a dispute that plaintiff did not notify defendant FPM that the action had been filed despite having several conversations with FPM's counsel prior to the filing of the Complaint.

It is also black letter law that where the defendant has chosen to default and not answer the Complaint, that constitutes a waiver of any challenge to venue.  See Hoffman v. Blaski, 363 U.S. at 343; see also Empire Fire & Marine Ins. Co. v. Estrella, No. 18 CV 3422, 2019 WL 4744208, at *2 (E.D.N.Y. Sept. 30, 2019) (noting that "defects in venue . . . are deemed waived when a defendant defaults"); LG Cap. Funding, LLC v. M Line Holdings, Inc., 422 F. Supp. 3d 739, 754 (E.D.N.Y. 2018) (noting that "numerous courts have concluded that a defaulting party waives the defense of improper venue" and collecting cases); Saunders v. Morton, 269 F.R.D. 387, 400 (D. Vt. 2010) (holding "proper venue is not essential to a valid judgment; therefore a venue defect will be waived by failing to appear and suffering a default judgment" (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2695

13

(3d ed. 1998))).

However, the question before this Court is whether defendant waived the defense of venue by failing to act in response to a Complaint of which it was unaware, as evidenced by the issues surrounding transmission of the pleadings from the Secretary of State.  Waiver is generally understood as "a unilateral act of one person that results in the surrender of a legal right" and a court reviewing a question of waiver must determine whether "the person voluntarily gave up the right" they allegedly waived.  Waiver, LegalDictionary, available at: https://legal-dictionary.thefreedictionary.com/waiver.  A party does not waive a defense such as venue when the party "did not know that the defense was available" at the time of filing.  Pusey v. Dallas Corp., 938 F.2d 498, 501 (4th Cir. 1991); see Waiver of Certain Defenses—Rule 12(h)(1), 5C Fed. Prac. & Proc. Civ. § 1391 (3d ed.).

The language of Federal Rule of Civil Procedure 12(h), which deals with waiver, also requires that a party must make a conscious choice to waive a defense; a party waives a defense by "omitting it" or "failing to . . . make it by motion . . . or include it in a responsive pleading" or amendment, Fed. R. Civ. P 12(h)(1), which is conduct that first requires knowledge of the existence of the defense.  Indeed, this Court has described waiver as "established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage." LG Cap. Funding, LLC v. M Line Holdings, Inc., 422 F. Supp. 3d at 754.  Here, it appears that defendant did not have notice of the action in the first place due to a delay at the Secretary of State's Office.[13]  Thus, at the very least, defendant could not have known that the defense of waiver was available when it was unaware of the action in the first instance.

---

[13] While the "mere denial of receipt of the summons and complaint, without more, is insufficient to rebut the presumption of proper service created by the service upon the Secretary of State," Bank of New York Mellon v. Marolda, 139 A.D.3d 774, 777, 33 N.Y.S.3d 280, 283 (2d Dep't 2016); see Lange v. Fox Run Homeowners Ass'n, Inc., 127 A.D.3d 823, 824, 7 N.Y.S.3d 334, 336 (2d Dep't 2015) (finding

For the same reason, it is hard to find that defendant FPM acted willfully in defaulting in this matter.  See American All. Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 60 (2d Cir. 1996) (noting that no prior cases "denied motions to vacate because of mere administrative or clerical error" and finding no willfulness where failure to answer due to "filing mistake" by in-house counsel clerk); Brien v. Kullman Indus., Inc., 71 F.3d 1073, 1078 (2d Cir. 1995) (finding no "willfulness" where, among other factors, defendant "received conflicting information from the clerk's office as to the correct docket number assigned to the case"); Joe Hand Promotions, Inc. v. Capomaccio, No. 09 CV 6161, 2009 WL 3268558, at *4 (W.D.N.Y. Oct. 6, 2009) (finding lack of "willfulness" where defendants immediately retained counsel once they received notice of the entry of default and had not previously answer because parties were engaged in settlement discussions).

Additionally, in each of the cases cited by plaintiff where the defense of venue was held waived although default was vacated, the defendants had notice of the action, there were no issues regarding service, and the defendants simply made the conscious decision not to answer or otherwise respond.  See, e.g., MD Produce Corp v. 231 Food Corp., 304 F.R.D. 107, 108 (E.D.N.Y. 2014) (noting defendants are not "free of fault for their failure to appear" where defendants chose not to appear because of ongoing settlement negotiations).  Despite the willfulness of the defendants' decisions not to answer in those cases, the courts ultimately

that the defendant "fail[ed] to swear to specific facts rebutting the statements in the process server's affidavit"), here Mr. Diskind's Affidavit does not deny receipt wholesale; it sets forth the fact that FPM did not receive service until April 15, 2021, more than a month after the Secretary of State was served on March 9, 2021.  (See ECF No. 7).  Although plaintiff challenges the Affidavit because Mr. Diskind merely speculates as to the cause of the delay in delivery (Pl.'s Reply at 5-6), it is undisputed that the other defendants served through the Secretary of State suffered a similar delay in the transmission of the pleadings.  (See ECF Nos. 25, 26, 32 (containing stipulations that waive defenses of "insufficient service of process")); cf. Price v. Boston Rd. Dev. Corp., 56 A.D.3d 336, 867 N.Y.S.2d 415, 416 (1st Dep't 2008) (affirming vacatur of default under N.Y. C.P.L.R. § 317 and crediting defendant's affidavits that it did not receive "actual notice" of the action until served with motion for default judgment).

determined that decision on the merits, along with the absence of prejudice to the plaintiff, justified vacating the default, but did not excuse the knowing and voluntary waiver of certain defenses. None of those cases, however, seem to present the unusual circumstances found here where there seems to have been a ministerial error that prevented "prompt" delivery of the summons and complaint upon the defendant. See, e.g., Criollo v. NY Fine Interiors Inc., 2021 WL 1200318, at *9 (contesting receipt of the summons because defendant's addresses were "inundated with junk mail" and "undergoing renovations" when served); MD Produce Corp. v. 231 Food Corp., 304 F.R.D. at 109 (noting no objection to service). Thus, because of the issues surrounding transmission of the pleadings by the Secretary of State, FPM lacked notice of the action, and could not voluntarily waive its right to challenge venue by failing to answer. See Hoffman v. Blaski, 363 U.S. at 343 (noting that a defendant must have been "properly served with process" in order to waive venue).

Accordingly, it is respectfully recommended that plaintiff's motion to strike FPM's Fifth Affirmative Defense challenging venue be denied.

## C. Defendant's Motion to Transfer Venue

Even if the court were to find waiver under these circumstances, a defendant is not precluded from moving to transfer venue under 28 U.S.C. § 1404. Leif Hoegh & Co. v. Alpha Motor Ways, Inc., 534 F. Supp. 624, 626 (S.D.N.Y. 1982) (finding waiver but addressing defendants' motion to transfer venue); see Breindel & Ferstendig v. Willis Faber & Dumas Ltd., No. 95 CV 7905, 1996 WL 413727, at *3 (S.D.N.Y. July 24, 1996) (noting that waiver under Fed. R. Civ. P. 12(h) is inapplicable to § 1404 motions); Waiver of Venue Defects, 14D Fed. Prac. & Proc. Juris. § 3829 (4th ed.). Further, the Court "may initiate transfer on its own motion" pursuant to 28 U.S.C. § 1404. Hamilton v. Accu-Tek, 47 F. Supp. 2d 330, 339

16

(E.D.N.Y. 1999); see Travis v. Navient Corp., 284 F. Supp. 3d 335, 349 (E.D.N.Y. 2018) (noting that "the Court may *sua sponte* transfer a case under § 1404").

Defendant FPM moves for a transfer of venue from the Eastern District of New York to the Western District of New York pursuant to 28 U.S.C. § 1404. That statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties consented." Id. § 1404(a). In moving to transfer under § 1404(a), the court must first determine if the action "might have been brought in the district to which transfer is sought." Smart Skins LLC v. Microsoft Corp., No. 14 CV 10149, 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015) (internal quotation marks and citations omitted). Venue must be proper in the transferee district, and the defendants must be subject to jurisdiction in the other district at the time the action was filed to satisfy this prong of the two-step inquiry. Id.; see Nuss v. Guardian Life Ins. Co. of Am., No. 20 CV 9189, 2021 WL 1791593, at * 2 (S.D.N.Y. May 5, 2021) (discussing the two-step inquiry).

The second prong of the test requires the court to determine "whether convenience of the parties and witnesses and the interests of justice favor transfer." CVS Pharmacy, Inc. v. AstraZenica Pharms. L.P., No. 19 CV 9999, 2020 WL 4671659, at *4 (S.D.N.Y. Aug. 12, 2020). There is "no rigid formula" for making this determination and courts look to a variety of factors, including the convenience of witnesses and the parties, the locus of the operative facts, the location of documents, the weight accorded plaintiff's choice of forum, the relative means of the parties, and trial efficiency. Travis v. Navient Corp., 284 F. Supp. 3d at 349 (citing D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106-07 (2d Cir. 2006)); see Fuji Photo Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006). Although the court has "broad

discretion" to consider issues of convenience and fairness, D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d at 106, as a general matter, the "[p]laintiff's choice of forum should not be disturbed unless the balance of the factors tips heavily in favor of a transfer." MasterObjects, Inc. v. Amazon.com, Inc., No. 20 CV 3478, 2020 WL 6075528, at *1 (S.D.N.Y. Oct. 15, 2020).

Plaintiff commenced this action in the Eastern District of New York. In its Answer and by motion, defendant FPM seeks to have the case transferred to the Western District of New York, which is the situs of the property where the fire occurred. (See ECF No. 21; Def.'s Mem. in Opp. at 8). There appears to be no dispute that, at the time the suit was brought, all of the defendants were subject to the jurisdiction of the Western District which satisfies the first prong. (Def.'s Mem. in Opp. at 8; see Pl.'s Reply at 6-10); see also Smart Skins LLC v. Microsoft Corp., 2015 WL 1499843, at *4. Thus, the Court turns to the parties' arguments regarding the second prong.

1) Defendant's Arguments

Defendant FPM contends that as to the second factor – the convenience of the parties and the witnesses – the Western District of New York is the most convenient venue. (Def.'s Mem. in Opp. at 1, 7, 8-12). Defendant argues that the Western District is far more convenient than the instant district, which has no "nexus" to the case. (Id. at 9-10). Among other factors, defendant cites to the fact that the insurance policy at issue here was procured in the Western District of New York for services related to a site, also in the Western District of New York, where the fire occurred. (Id. at 9, 11); see Horanzy v. Vemma Nutrition Co., 87 F. Supp. 3d 341, 349 (N.D.N.Y. 2015) (noting that "courts look to where the events from which the claim arises occurred"); Oriska Ins. Co. v. Brown & Brown of Texas, Inc., No. 02 CV 578, 2005 WL 894912, at *5 (N.D.N.Y. Apr. 8, 2005) (holding that the locus of the operative events is "an important

factor in deciding venue").  The underlying litigation is also pending in Monroe County in the Western District of New York, having been transferred there by the Supreme Court in New York County, where the underlying action was initially filed.  (Picciotti Aff. ¶¶ 2-3, Ex. A (providing Order transferring venue from New York County to Monroe County)).

Defendant also argues that the Court should consider that all of the relevant documents are located in the Western District, even while acknowledging that in these days, where secure document transfer technology exists to facilitate the exchange of documentary evidence, this factor may have less relevance.  (Def.'s Mem. in Opp. at 11 (citing Andrews v. A.C. Roman & Assocs., Inc., 914 F. Supp. 2d 230 (N.D.N.Y. 2012) (holding that "[a]lthough the location of relevant documents may be of less significance in light of modern copying and reproduction techniques, it nonetheless retains some relevance to the venue inquiry"))).  Perhaps most significant is defendant's argument that defendant's witnesses reside in the Western District of New York, which is also where FPM is located, and that they would all be inconvenienced if the case remained in Eastern District.  (Id. at 10 (citing Andrews v. A.C. Roman & Assocs., Inc., 914 F. Supp. 2d at 238)); see Crandall v. Ross, No. 17 CV 755, 2019 WL 3302819, at *4 (N.D.N.Y. July 23, 2019) (holding that the convenience of the witnesses and the parties is "the essential criterion under the venue statute" (alterations and quotations omitted)).

Defendant recognizes that the plaintiff's choice of forum is given deference in the transfer analysis, but argues that in this case, plaintiff is from Pennsylvania and not from the Eastern District of New York.  (Def.'s Mem. in Opp. at 10.)  Thus, defendant contends that there is little, if any inconvenience, to plaintiff beyond the "incremental burden" of traveling to the Western District of New York rather than the Eastern District.  (Id.)  Defendant further contends that where, as here, the plaintiff has chosen to "forum shop," as shown by the fact that the

Eastern District of New York has little or no connection to the subject matter and is not the plaintiff's home forum, "'the importance of the plaintiff's forum choice as a factor is considerably lessened.'"  (Id. at 12 (quoting Plastic Suppliers, Inc. v. Cenveo, Inc., No. 10 CV 0512, 2011 WL 196887, at *3 (N.D.N.Y. Jan. 20, 2011))).  Finally, defendant argues that the Western District has a "clear and substantial local interest in deciding this dispute."  (Id.)  Thus, a transfer to the Western District would "serve the interests of justice and judicial efficiency." (Id. (citing Horanzy v. Vemma Nutrition Co., 87 F. Supp. 3d at 350)).

2) Plaintiff's Response

Plaintiff does not argue with the factors relied upon by defendant in determining whether a transfer of venue is warranted in this case.  (See Pl.'s Reply at 6 (quoting New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112 (2d Cir. 2010) (listing the factors as "inter alia:  (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents . . . , (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties"))).  Plaintiff asserts, however, that in moving to transfer venue, defendant has a "high burden to prevail and must establish by 'clear and convincing evidence' that transfer is warranted."  (Id. (citing New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d at 114)).

In analyzing the factors, plaintiff emphasizes that its choice of forum is "entitled to significant consideration" (id. (quoting Easy Web Innovations, LLC v. Facebook, Inc., 888 F. Supp. 2d 342, 348 (E.D.N.Y. 2012))), and "should not be disturbed unless other factors weigh strongly in favor of transfer."  (Id. (quoting Schwartz v. Marriott Hotel Servs., Inc., 186 F. Supp. 2d 245, 251 (E.D.N.Y. 2002))).  Plaintiff contends that, given that this is a case where the

question is whether FPM lied on its application for insurance, there is no added convenience in transferring the case to the Western District.  (Id. at 7, 9-10).  Plaintiff states that there are only a few critical documents relating to the coverage issues, such as the Policy, the application for the Policy, and the contract outlining the work to be done by FPM, and states that these documents have already been exchanged.  (Id.)  As for witnesses, plaintiff argues that because the case does not involve the fire, depositions about what occurred, which is the focus of the underlying action, are not necessary, and it "is unlikely that any depositions will be necessary in this case about the application for insurance."  (Id. (citing Jenkins v. Wilson Freight Forwarding Co., 104 F. Supp. 422, 424 (S.D.N.Y. 1952) (denying transfer where no "clear allegation" that witnesses would "actually be called to testify at the trial"))).  Plaintiff further argues that, even if depositions are necessary, they can be conducted virtually.  (See id. at 7-8).  Thus, plaintiff disputes defendant's argument that the location of the documents and convenience of the witnesses favors a transfer.  (Id.)

Plaintiff also argues that, with respect to the convenience of the parties, Penn-Star is located in Pennsylvania, making the Eastern District of New York significantly more convenient than the Western District for plaintiff.  (Id. at 8-9 (noting it takes about two hours to drive to Brooklyn from Bala Cynwyd and over five hours to drive to Rochester)).  As for the other defendants who have not challenged plaintiff's choice of venue, Rosewood is headquartered in Bayville, within the Eastern District of New York, and Gateway is located in New Jersey, making the Eastern District more convenient for them as well.  (Id. at 9).  The five other defendants, who also have not challenged venue, reside in Rochester, East Syracuse, and Webster, New York.  (Compl. ¶¶ 2, 5-9).  Plaintiff contends that the remaining factors—interest in the action, availability of process to compel attendance of witnesses, and the relative means of

the parties—are neutral and not sufficient to warrant disturbing plaintiff's choice of forum.  (See Pl.'s Reply at 10).

3) Analysis

As a threshold matter, the Court notes that while FPM raised the affirmative defense of improper venue in its Answer, defendant has not argued the impropriety of venue in the Eastern District in its motion to transfer, relying instead on the factors relevant to a transfer pursuant to 28 U.S.C. § 1404.  (See Def.'s Mot.).  Similarly, while the Court denied plaintiff's motion to strike defendant's affirmative defense of improper venue, see supra, it did not reach the issue of whether the affirmative defense is a sufficient basis for dismissal nor did the parties address the substance of such a defense.  (See supra n.12).

Considering the factors that guide a court in considering a transfer motion, the Court agrees with FPM that the relevant factors weigh in favor of a transfer. The key considerations in the venue analysis are factors two, four, and five:  the convenience of the witnesses, the locus of operative facts, and the convenience of the parties.  Both parties concede that the third factor, the location of documents, is largely irrelevant to the issue of transfer in this case because it does not appear to be a document intensive case and most of the documents have already been exchanged. Similarly, factors six (the availability of process to compel witnesses), and seven (the relative means of the parties) do not weigh heavily in either party's favor.

However, there is no question that the locus of operative facts lies in the Western District of New York.  The property that is the subject of the underlying state litigation is located in the Western District; that is where the fire occurred; and perhaps, most critical to the analysis here, that is where the Policy was procured.  Based on the record currently before this Court, none of the conduct at issue occurred in the Eastern District and there is no direct connection to this

district except for the fact that one of the defendants, Rosewood, is located on Long Island. It appears that the state court, in transferring the underlying state action from New York County to Monroe County in the Western District, also recognized that the locus of facts does not lie here.

In arguing that the locus of operative facts is not material in this case, plaintiff asserts that this federal action is about "whether FPM lied on its application for insurance with Penn-Star and wrongfully obtained insurance coverage as a result," rather than the fire that created the dispute about insurance in the first instance. (Pl.'s Reply at 9; see Compl. ¶¶ 35-36). However, at least some of the misrepresentations alleged in plaintiff's Complaint concern actions taken at the site, including whether FPM served as the "Project Manager" on the Rosewood Project, whether the work performed was for "repairs" or "new construction or renovation," and whether FPM served as a subcontractor. (Compl. ¶¶ 26, 28, 31). Additionally, PennStar states that "the Policy provides no coverage for the Rosewood Claim" because FPM "was performing work outside" of the policy coverage. (Id. ¶ 39). Thus, the question of what work FPM was performing at the site may be a critical aspect of this case. As between the Eastern and Western Districts, it seems clear that the locus of operative facts weighs heavily in favor of a transfer.

The convenience to the witnesses is "probably the single-most important factor in the analysis of whether transfer should be granted." Mazuma Holding Corp. v. Bethke, 1 F. Supp. 3d 6, 29-30 (E.D.N.Y. 2014). If a party seeks to transfer on account of the convenience of witnesses, it must "clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." AIG Fin. Prod. Corp. v. Public Util. Dist. No. 1 of Snohomish Cty., Wash., 675 F. Supp. 2d at 369. The party contesting venue must also show that the witness's testimony is material to the claims at issue. See Mazuma Holding Corp. v. Bethke, 1 F. Supp. 3d at 30. Here, FPM lists six witnesses, with five of them residing in Rochester or

Syracuse, New York and one residing in Lakewood, New Jersey.  (See ECF No. 33-8 (providing defendant's initial disclosures, including its proposed witnesses)).  Five of the witnesses, including the one that resides in Lakewood, New Jersey, would testify regarding the work done on the Project and the sixth would testify as to the procurement of the insurance policy.  (Id.)

Although plaintiff takes the position that depositions and witness testimony would not be necessary in this case, plaintiff has alleged that defendant made misrepresentations in the "process of obtaining the Policy," including by lying about the type of work that was to be performed on the Rosewood Project.  (See Compl. ¶¶ 26-32).  In an action regarding whether an insurer may rescind an insurance policy issued in reliance on "material misrepresentations," the misrepresentation must occur "at or before the making of the insurance contract."  Fidelity & Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp., 540 F.3d 133, 139 (2d Cir. 2008). Testimony regarding the events surrounding the fire would likely be unnecessary to determine whether defendant made misrepresentations to plaintiff in order to obtain the Policy.  However, testimony regarding the work done on the Project would be necessary to determine whether FPM initially lied about the work it would do when applying for the Policy because the Court would be required to compare the work done with FPM's statements on the Policy application.  See AGCS Marine Ins. Co. v. Associated Gas & Oil Co., 775 F. Supp. 2d 640, 647 (S.D.N.Y. 2011) (finding, in declaratory judgment insurance coverage case, that issue was not a simple matter of contract interpretation but rather would require analysis of work performed under contract). Further, the witnesses to the work performed are likely the individuals who would provide information on the sort of work that was anticipated, which is information that was subsequently relied upon in the Policy application.

24

Additionally, plaintiff states that "even if FPM is not deemed to have misrepresented itself . . . the claims at issue in the Rosewood [action] are barred from coverage by the provisions of the Policy." (Compl. ¶ 37). Plaintiff relies on the argument that "FPM *was* performing work" outside the Policy classifications when the fire occurred in claiming that the claims are not covered. (See id. ¶¶ 39, 47). Plaintiff also states that the claims arise "out of FPM's ongoing operations or operations" and argue that, since the claims pertain to particular property damage, they are therefore excluded. (Id. ¶¶ 52-53). Clearly, determining what sort of work FPM was performing, and whether it falls outside of the Policy, would require the trier of fact to rely on the witnesses who can testify as to the work performed. See Scottsdale Ins. Co. v. United Indus. & Const. Corp., 137 F. Supp. 3d 167, 177 (E.D.N.Y. 2015) (looking to work performed in insurance case to determine whether accident caused as a result of work performed fell within policy exclusion). The testimony of all six witnesses would potentially be necessary to determine first whether FPM misrepresented the work it would eventually perform and second whether the claims fall within the Policy.

Even if the Court only considers the testimony of Kelly Schaffer, who will testify about FPM's Policy application, Ms. Schaffer lives in Rochester, New York which would make the Western District more convenient for her. See (ECF No. 33-8); Masluf Realty Corp. v. Markel Ins. Corp., No. 13 CV 3031, 2014 WL 1278102, at *5 (E.D.N.Y. Mar. 27, 2014) (finding witnesses' testimony material when they would testify as to the misrepresentations made in insurance fraud context); American Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc., 474 F. Supp. 2d 474, 483 (S.D.N.Y. 2007) (finding witnesses who would attest to negotiation of insurance contract material), aff'd sub nom. New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102. Plaintiff also has not proffered any witnesses for

the Court to consider in this analysis, United States Fid. & Guar. Co. v. Republic Drug Co., 800 F. Supp. 1076, 1081 (E.D.N.Y. 1992) (noting plaintiff's failure to specify witnesses in finding that convenience of witnesses favored transfer), so the convenience of the respective venues for plaintiff's witnesses is not a factor in this case.  In summary, the convenience of the forum to the defendant's witnesses weighs heavily in favor of transfer to the Western District of New York.

Plaintiff argues, however, that the convenience of the parties weighs in favor of keeping the action in the Eastern District.  It is clear that the Eastern District of New York is somewhat more convenient for plaintiff, who is located in Pennsylvania, for Gateway, which is located in New Jersey, and for Rosewood,[14] whose offices are on Long Island.  By contrast, the Western District of New York is clearly more convenient for FPM, as well as for the five remaining defendants, all of whom are located in Webster, Rochester, or East Syracuse, New York.  However, the question of convenience looks to whether the "inconvenience for the party moving for transfer could be completely eliminated without substantially adding to the nonmoving party's inconvenience."  View 360 Sols. LLC v. Google, Inc., No. 12 CV 1352, 2013 WL 998379, at *4 n.4 (N.D.N.Y. Mar. 13, 2013), aff'd, 2013 WL 12130430 (N.D.N.Y. Aug. 13, 2013).  Although FPM's inconvenience would be lessened if the transfer was granted and plaintiff would have to travel regardless, whether from Pennsylvania to Brooklyn if the action remains in the Eastern District, or to the Western District if the case is transferred, this factor may weigh slightly in plaintiff's favor.  See id. (noting that "where transfer would merely shift the inconvenience from one party to the other, the Court should leave plaintiff's choice of venue undisturbed").  Thus, the convenience of the parties weighs slightly in favor of retaining jurisdiction.

---

[14] It should be noted that neither Rosewood, Fros, nor LME have appeared with counsel in this federal action.

Lastly, plaintiff contends that the Court is required to give deference to the plaintiff's choice of venue.  However, the Court notes that "deference is reduced where, as here, the plaintiff's choice of forum is not its principal place of business."  AIG Fin. Prod. Corp. v. Public Util. Dist. No. 1 of Snohomish Cty., Wash., 675 F. Supp. 2d 354, 368 (S.D.N.Y. 2009).  Here, plaintiff's place of business is not in the Eastern District and as such the venue selection is not entitled to the significant deference that is ordinarily accorded to plaintiff's choice of forum.  Even considering plaintiff's forum selection, see Alpha Indus., Inc. v. Alpha Clothing Co. LLC, No. 21 CV 87, 2021 WL 2688722, at *12 (S.D.N.Y. June 30, 2021) (considering plaintiff's choice of forum as a factor although it was not plaintiff's home forum), the Court finds that defendant has carried its burden to show by "clear and convincing evidence" that the factors overall weigh strongly in favor of transfer.  See New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d at 114.  Although plaintiff's choice of forum is given some deference, here there is really nothing that ties the case to this district, and it is clear that the locus of operative facts and the convenience of the witnesses weigh heavily in favor of transfer.

Accordingly, the Court respectfully recommends that defendant's motion for transfer be granted.

<u>CONCLUSION</u>

This Court respectfully recommends that the District Court deny plaintiff's motion to strike defendant's Fifth Affirmative Defense and grant defendant's motion to transfer venue.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor

v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a

. . . report [and recommendation] operates as a waiver of any further judicial review of the

magistrate [judge's] decision").

The Clerk is directed to send copies of this Report and Recommendation to the parties

either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: February 24, 2022
          Brooklyn, New York

                                          _Cheryl L. Pollak_
                                          CHERYL L. POLLAK
                                          Chief United States Magistrate Judge
                                          Eastern District of New York